IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BONNIE J. LANGLITZ**
**EX REL RICK LEON LANGLITZ,**

    Plaintiff,                               No. 3:11-cv-00111-MO

          v.                                  OPINION AND ORDER

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

    Defendant.

    **MOSMAN, J.,**

    On behalf of her deceased son, Rick Langlitz, Bonnie Langlitz challenges the

Commissioner's decision denying his claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").    This Court has jurisdiction under 42 U.S.C. § 405(g).    I

now affirm the Commissioner's decision for the reasons stated below.

**PROCEDURAL BACKGROUND**

    On May 4, 2006, Mr. Langlitz filed for DIB and SSI under Title II and Title XVI of the

Social Security Act, alleging disability beginning on May 11, 2000.    AR 20.    The application

was denied initially on November 1, 2006, and upon reconsideration on February 12, 2007.    *Id.*

An administrative law judge ("ALJ") held a hearing on July 10, 2009.    *Id.*    On September 14,

2009, the ALJ issued a decision denying Mr. Langlitz's application. *Id.* at 35.[1]   The Appeals

Council denied review on January 7, 2011, making the ALJ's decision the final decision of the

Commissioner. *Id.* at 1.   Mr. Langlitz appealed on January 28, 2011.   Ms. Langlitz was

substituted for her son on September 16, 2011 [14].

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); 20 C.F.R. §§ 404.1520,

416.920(a).   At step one, the ALJ found Mr. Langlitz had not engaged in substantial gainful

activity since the alleged onset date of May 11, 2000.   AR 23.   At step two, the ALJ found Mr.

Langlitz has the following severe impairments: degenerative disc disease of the lumbar spine,

depressive disorder, generalized anxiety disorder, and alcohol dependence. *Id.* at 24.

Continuing to step three, the ALJ found that the impairments and combination of impairments do

not meet or exceed a disorder listed in the Commissioner's regulations. *Id.*

The ALJ next evaluated Mr. Langlitz's residual functional capacity ("RFC"), finding that

he could perform light work, with the following limitations:

> [H]e can only occasionally balance, crouch, crawl, stoop, or climb ramps and stairs;
> he can never climb ropes or scaffolds; and he is limited to performing no more than
> lower semiskilled tasks consistent with specific vocational preparation [] level 3
> and which do not involve more than occasional contact with the general public.

*Id.*   At step four, the ALJ relied on the testimony of a vocational expert ("VE") and found Mr.

Langlitz incapable of performing his past relevant work. *Id.* at 34.   At step five, the ALJ relied

on the VE's testimony and found that, considering Mr. Langlitz's age, education, work experience,

and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Langlitz

---

[1] The ALJ explained that Mr. Langlitz previously filed for disability benefits in 2003 and 2004, both applications were denied, and Mr. Langlitz did not appeal those decisions.   AR 20.   The ALJ found that, because Mr. Langlitz had not justified re-opening these prior determinations, and because the most recent denial occurred on March 17, 2005, the period to be adjudicated in this case begins on March 18, 2005, not May 11, 2000. *Id.*   Plaintiff does not challenge this analysis.

could perform.  *Id.*   Specifically, the ALJ found Mr. Langlitz could work as an assembler of

small products, electronics worker, or machine trimmer.  *Id.* at 35.   Based on this step five

finding, the ALJ concluded Mr. Langlitz was not disabled, and denied his claim.  *Id.*

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal

standards and that the ALJ's findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such

relevant evidence as a reasonable person might accept as adequate to support a conclusion."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*,

466 F.3d 880, 882 (9th Cir. 2006)).   The Commissioner's decision must be upheld if it is a

rational interpretation of the evidence, even if there are other possible rational interpretations.

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   The reviewing court may not substitute

its judgment for that of the Commissioner.   *Robbins*, 466 F.3d at 882; *see also Bray*, 554 F.3d at

1222 ("Where the evidence as a whole can support either a grant or a denial, [the court] may not

substitute [its] judgment for the ALJ's.") (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th

Cir. 2007)).

## DISCUSSION

Plaintiff raises three arguments on appeal: (1) the ALJ's step two findings were inadequate

because the ALJ missed several impairments that were "severe"; (2) the ALJ provided inadequate

explanation at step three; and (3) the ALJ improperly rejected the opinion of two treating

physicians.   I will address each argument in turn.

## I.    Step Two Analysis

At step two, the ALJ identified degenerative disc disease of the lumbar spine, depressive disorder, generalized anxiety disorder, and alcohol dependence as "severe" impairments.   AR 24. The ALJ noted that "[n]o other impairments, including seizure secondary to alcoholic withdraw, are shown by the record to be 'severe.'"   *Id.*   Plaintiff argues the ALJ should have done more because there was evidence of a personality disorder that "might indeed be a severe impairment." (Pl.'s Br. [21] 6).   Specifically, plaintiff argues the ALJ ignored the conclusion of examining physician Dr. Dale Veith, who diagnosed Mr. Langlitz with a personality disorder.   (*Id.* at 5) (citing AR 400).   Dr. Veith opined that Mr. Langlitz's "personality traits . . . interfere with his ability to persist in activities in which he does not want to engage.   His personality traits are also likely to have a negative impact on his ability to engage in age-appropriate social interactions." AR 400.   Plaintiff points out that non-examining psychologist Dr. Frank Lahman also identified a personality disorder and opined Mr. Langlitz would need a supervisor who knows about Mr. Langlitz's condition, would require assistance with decision-making, and also that Mr. Langlitz "is not expected to demonstrate normal awareness of hazards."   (Pl.'s Br. [21] at 6) (citing AR 422, 431).   Finally, plaintiff argues that, in addition to ignoring the personality disorder, the ALJ's step two finding ignores evidence from treating psychiatrist Dr. Holly Hoch, who diagnosed Mr. Langlitz with medication dependence and rated Mr. Langlitz's Global Assessment of Function ("GAF") at 50.[2]   (*Id.* at 6–7) (citing AR 312).

If a claimant makes it past step two because the ALJ deems at least one impairment "severe," a failure at step two to deem an additional impairment "severe" is harmless if the ALJ considered the impairment "later in the sequential analysis."   *Hubbard v. Astrue*, 371 F. App'x

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

785, 787 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)); *Burch,* 400

F.3d at 682 ("Assuming without deciding that this omission constituted legal error, it could only

have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because

the other steps, including this one, were resolved in her favor."). This conclusion results from the

fact that an ALJ must consider even non-severe impairments in later steps. *See* 20 C.F.R.

§ 404.1520(e); SSR 96-8p, 1996 WL 362207, at *34477 (July 2, 1996) (requiring ALJ's crafting

RFCs to "consider limitations and restrictions imposed by all of an individual's impairments, even

those that are not 'severe'"). Thus, the issue that matters is whether the ALJ adequately

accounted for all impairments at step three and crafted an RFC that accounts for limitations

imposed by severe and non-severe impairments, not whether any particular impairment was

labeled severe or non-severe at step two. Unless the step three findings or RFC do not adequately

account for the non-severe impairments, any error at step two is harmless. And the claimant bears

the burden of showing prejudice from a step two error. *See McLeod v. Astrue*, 640 F.3d 881, 886–

89 (9th Cir. 2011).

Plaintiff's only specific argument regarding prejudice is that the ALJ's error at step two "is

harmful because the ALJ did not consider [the personality disorder]." (Pl.'s Reply [24] 3). That

argument misses the mark on two levels. First, a failure to consider the personality disorder could

only be prejudicial if consideration could have changed the result. And plaintiff has not explained

how, had the ALJ better considered the personality disorder, such consideration could have

justified a different analysis at step three or a different RFC. And none is apparent. The

evidence plaintiff cites for the proposition that the personality disorder was severe, identified

above, suggests no specific functional limitations, is not inconsistent with the RFC, and does not

undercut the ALJ's step three findings.

Second, the ALJ did consider the personality disorder and did consider the only functional limitation suggested by Dr. Hoch (the GAF score of 50). The ALJ discussed in detail Dr. Veith's findings, including his findings concerning personality disorder, and specifically found that the personality disorder would be "adequately addressed by limiting [Mr. Langlitz] to work with only occasional contact with the general public." AR 26, 30. And the ALJ considered the fact that Mr. Langlitz had a GAF score of 50 and found the RFC sufficiently accounted for that fact. *Id.* at 27, 30. The ALJ expressly incorporated this analysis at step three. *Id.* at 24. Plaintiff makes no argument that the ALJ's analysis was insufficient.

Accordingly, I find that any error at step two in the ALJ's analysis is harmless.

## II.    **Step Three Analysis**

At step three, the question is whether a severe impairment meets or equals one of a list of specific impairments described in the Commissioner's regulations. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Part of the analysis for a mental impairment is rating the level of limitation in four specific functional areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). *See* 20 C.F.R. § 404.1520a(e)(3). The ALJ expressly addressed each functional area, concluding that due to Mr. Langlitz's mental impairments he faces a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation. AR 24. The ALJ noted that the extent of these impairments is "shown in the following paragraphs." *Id.* The paragraphs that followed were the paragraphs discussing the RFC. Plaintiff argues the ALJ did not adequately explain the step three findings under the Ninth Circuit's decision in *Keyser*, 648 F.3d 721. This argument fails for two reasons.

First, in *Keyser,* unlike here, the ALJ's decision "did not include a specific finding as to the degree of limitation in any of the four functional areas." *Keyser*, 648 F.3d at 726. Instead, the ALJ only referenced and adopted a form completed by a medical consultant, which was not attached to the ALJ's decision. *Id.* The court found that approach erroneous because the ALJ never addressed whether the claimant's mental impairments met or equaled a listed impairment. *Id.* at 727. The court distinguished its prior decision of *Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007), where, "the ALJ did in fact make an explicit finding as to each of the four functional areas." *Keyser,* 648 F.3d at 726. *Keyser* explained that *Hoopai* rejected the argument "that the ALJ was further required to document the considerations underlying the findings for those four areas" and "conclud[ed] that a specific finding as to the four functional limitations was sufficient." *Id.* Since the ALJ here did make explicit findings as to the four functional areas, it is *Hoopai*'s holding, confirmed in *Keyser*, which controls this case. While the ALJ noted in the step three discussion that the basis for the step three findings was in a separate section of the ALJ's decision, plaintiff has cited no authority indicating the ALJ was required to do more.

Second, plaintiff does not argue that the discussion in the ALJ's RFC assessment inadequately supports the ALJ's step three findings. Nor does plaintiff dispute the ALJ's conclusions regarding the four functional areas or point to any evidence that contradicts those conclusions or circumstances that suggest any error was prejudicial. Thus, plaintiff has not carried the burden to show prejudice, even assuming the ALJ's step three approach was erroneous, and is therefore not entitled to relief under the Ninth Circuit's post-*Keyser* decision of *McLeod*, 640 F.3d 881. Accordingly, I find the ALJ did not err at step three and any error is harmless in any event.

### III.    Treating Physicians' Opinions

Plaintiff's final argument is that the ALJ improperly handled evidence from Dr. Gregory

Cole and Dr. Scott Gibson.

### A.    Dr. Cole

Dr. Cole submitted a "Mental Status Report" dated June 11, 2006, which indicated he had

seen Mr. Langlitz three times since November of 2005.  AR 365.  Dr. Cole opined that Mr.

Langlitz had sleep problems and panic disorder and noted that his pain, anxiety, and impulsivity

"would impact work."  *Id.* at 367.  The ALJ specifically addressed the records from Dr. Cole,

including this report.  The ALJ explained that the records were generally "unremarkable" and

that, beyond the general observation that Mr. Langlitz's work would be impacted, Dr. Cole "gave

no more specific limitations."  *Id.* at 27–28.  The ALJ noted that "Dr. Cole thought that pain and

anxiety would affect [the claimant's] work abilities, and this conclusory statement is also one

which essentially relies on the claimant's questionable self-report."  *Id.* at 30.  Plaintiff argues

the ALJ erred by failing to consider information from Dr. Cole and by not further developing the

record.  (Pl.'s Br. [21] 9–10).  I reject this argument for two reasons.

First, Dr. Cole's June 11, 2006, opinion does not suggest any specific functional limitations

the ALJ could have or should have incorporated into the RFC or create any ambiguity in the record

as a whole.  Since it is not inconsistent with the ALJ's findings, the ALJ did not need to explain

why he rejected Dr. Cole's opinion or further develop the record to resolve any ambiguity.  *See,*

*e.g., Howard ex rel Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not

required to discuss evidence that is neither significant nor probative.").

Second, to the extent it is somehow inconsistent with the RFC, the step three findings, or

the ALJ's analysis, the ALJ provided two valid reasons for discrediting Dr. Cole's opinion.  The

ALJ explained that Dr. Cole's opinion was conclusory.   An ALJ may discredit a treating

physician's opinion where, as here, the opinion is conclusory, brief, and unsupported by the record

or by any objective medical findings.   *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195

(9th Cir. 2004).   Plaintiff does not argue Dr. Cole's opinion was supported by objective medical

findings and no such support is apparent.   The ALJ also explained that Dr. Cole's opinion

appeared to be based on Mr. Langlitz's self-reporting and Mr. Langlitz was not credible.   *See*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding an ALJ properly discounted

treating physician's opinion that was based largely on subjective complaints of claimant found not

to be credible).   Plaintiff has not challenged the ALJ's analysis as to Mr. Langlitz's credibility and

does not dispute that Dr. Cole's conclusions were based on Mr. Langlitz's self-reporting.   I find it

was a rational interpretation of the evidence to conclude Dr. Cole's opinion was indeed based on

Mr. Langlitz's self-reporting, thus providing another valid reason for discrediting this opinion.

For these reasons, the ALJ's treatment of Dr. Cole's opinion was not erroneous.

B.   *Dr. Gibson*

Dr. Gibson completed a report on January 1, 2007, which, unlike Dr. Cole's report, opined

on specific work-related limitations.   AR 438.   Some, but not all, of Dr. Gibson's conclusions are

inconsistent with the RFC.   Among other things, Dr. Gibson opined Mr. Langlitz can lift no more

than 10 pounds on an occasional basis, can only stand four hours in an eight-hour day, can only sit

about six hours in an eight-hour day, would miss work two days a month, and needs to change

positions frequently.   *Id.* at 438–40.   The ALJ summarized Dr. Gibson's records and the January

2007 report and explained:

> [T]he limitations cited are largely speculative estimations of what a claimant whose
> symptoms are repeatedly shown to be incredible might require over the course of a
> day and a month.   Dr. Gibson cites no underlying findings which might support
> these limitations beyond a conclusory statement that repetitive motions worsened

the claimant's back pain, and a referral to the mild MRI results in 2004. Dr. Gibson also gave his opinion in January 2007, and . . . [o]f particular relevance are his own notes of a few months later indicating drug-seeking in the claimant's reported symptoms. The subsequent record also shows a continued pattern of negative clinical findings.

*Id.* at 33. Thus, the ALJ concluded, "to the comparatively limited extent that Dr. Gibson's report is inconsistent with the claimant's residual functional capacity, it is entitled to limited weight." *Id.* Plaintiff argues Dr. Gibson's report establishes Mr. Langlitz was capable of only sedentary work, but I conclude the ALJ gave sufficient reasons for partially rejecting the report.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Where, as here, a doctor's opinion is contradicted by the opinion of another doctor, the Commissioner must give "specific and legitimate reasons" that are "supported by substantial evidence in the record" for rejecting the opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quotation omitted).

I read the ALJ's decision as partially discrediting the January 2007 report because it was unsupported by clinical findings or objective evidence and instead based on Mr. Langlitz's own—not credible—reporting. That rationale is valid. *Tonapetyan*, 242 F.3d at 1149; *Batson*, 359 F.3d at 1195. And it is a rational interpretation of the record supported by sufficient evidence. Dr. Gibson's specific findings were apparently based, at least in part, on reports of back pain from Mr. Langlitz. AR 440 (noting that findings are based on "back pain with repetitive motion"). Beyond self-reporting, the only evidence Dr. Gibson cited in support of his opinion was a 2004 MRI, which identified mild to moderate problems with Mr. Langlitz's lumbar spine. *Id.* But, beyond possible statements from Mr. Langlitz himself, there is no explanation or evidence supporting a conclusion that the 2004 MRI translates to the specific limitations Dr. Gibson identified. Accordingly, it was reasonable to conclude that the January 2007 opinion is based on non-credible self-reporting and is otherwise conclusory and unsupported by objective

medical findings.    The ALJ therefore properly discredited it to the extent it was inconsistent with

the RFC and the ALJ's step three findings.

Additionally, the ALJ partially discredited the January 2007 report because it was

inconsistent with Dr. Gibson's subsequent records.    That reason is also valid and based on a

reasonable interpretation of evidence in the record.    *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216

(9th Cir. 2005) (holding that discrepancies in physician's own records provided a clear and

convincing reason for discrediting physician's conclusions); AR 452 (March 21, 2007, notes from

Dr. Gibson after office visit indicating Mr. Langlitz had a fair range of motion and normal gait and

that requested increase in pain medication was denied), 449 (note indicating back pain is "very

good"), 449–452 (notes from visits after March of 2007 indicating other problems without

mention of back pain), 452 (note indicating Mr. Langlitz was told he would need to find another

doctor if he continued requesting early medication refills).

Accordingly, I conclude the ALJ did not erroneously handle the evidence from Dr. Gibson.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence and is therefore

AFFIRMED.

IT IS SO ORDERED.

DATED this ___22___ day of May, 2012.

MICHAEL W. MOSMAN
United States District Court